CHARLES ADVERTISING COMPANY *v.* GRAVES.

4-9639 244 S. W. 2d 774

Opinion delivered January 7, 1952.

*Carlton Currie,* for appellant.

*Hendrix Rowell,* for appellee.

HOLT, J. Appellant sued appellees alleging ''that on the 5th day of April, 1950, plaintiff and defendants entered into an agreement under which agreement plaintiff agreed to place advertisements in two foreign papers for six days each, advertising machinery that the defendants had for sale. That defendants agreed to pay for this service the sum of $1,800; that plaintiff placed the advertisements in foreign newspapers as agreed, and has in every way performed its part of the agreement; that defendants have paid $600 to the plaintiff by check dated April 5, 1950, but have failed, refused, and neglected to pay the balance due under the agreement.''

Appellees answered admitting payment of $600, denied other allegations and further alleged that ''none of said equipment was sold and no benefit whatsoever inured to the defendants as a result of plaintiff's efforts, if any, to advertise and promote the sale of their equipment and accordingly in view of the agreement existing

between the parties, the plaintiff has been paid in full, etc.''

A trial resulted in a decree in favor of appellees. This appeal followed.

The primary and decisive question presented is the one of fact. Appellant's contention is that the contract here in question was solely for advertising appellees' property, whereas appellees contended that its primary purpose was to effectuate a sale of their property, especially by advertising it for sale in foreign or overseas newspapers in countries where the demand was especially heavy.

The record reflects that on April 3, 1950, appellees wrote appellant as follows: ''Mr. R. A. Kern of Kern-Limerick Tractor Company, Little Rock, Arkansas, gave us the name of your firm as being exporters of Used Construction Equipment.

''Due to financial reverses we are forced to sacrifice our equipment to raise some money.

''I have penciled in the very lowest figure that we can take for our equipment. If there is any commission charged for selling this equipment, it will be necessary for you to add it to the Selling Price.

''We will pay for any advertising and would like a fairly large coverage as time is of the essence of this deal.

''Our equipment is in the very best of condition and you are free to inspect it or us in any way you deem necessary.

''We would appreciate hearing from you concerning the above mentioned equipment at your earliest convenience.''

Immediately following receipt of this letter, appellant telephoned appellee, N. M. Graves, on April 5th and Graves gave his version of this conversation: ''A. I attached a list of the equipment to my letter and I had penciled in the figures. I thought that if he wanted to

show it to somebody he could write in what he wanted to charge. He called me and said our prices were ridiculously low, and I told him that was about all we could get in this country. He said they wanted it for export. He said Greece had about twenty million dollars under the Marshall Plan, and had about six weeks more or they lost their credit. I asked him how much he could get, and he said 'I know you can get as much as 10% more.' Q. What did he tell you he was going to do? A. He said he had contacts. I didn't know that he had just gone into business, and had no agents. Q. Where? A. In foreign countries that might be here buying and also in the foreign countries, and that he was going to run an ad in two foreign newspapers. * * * A. In the foreign countries themselves; he said foreign newspapers. He mentioned Greece and Arabia. Q. That knew him? A. Yes; that he had been doing business with and had sold equipment; that all he had to do was run an ad and he could sell equipment right off. * * * Q. You understood he was to advertise in foreign countries, across the ocean, and that Charles' name would be used? A. Yes. Q. And he, Charles, would sell the equipment subject to inspection? A. Yes, sir. * * * Q. At that time (meaning April 5th) did he tell you the Arabian and Finnish publications would be published and circulated in foreign countries? A. I still thought they would be published and circulated in foreign countries. Q. Did he tell you that? A. Yes, he did. * * * Q. And you have not received any benefit at all out of the arrangement? A. None whatever.''

Appellee, W. L. Graves, corroborated the testimony of his brother, N. M.

In this conversation, appellant did not explain that he was not an exporter, but led appellees to believe that their equipment could be sold abroad because of the heavy foreign demand in nations deriving benefits under the Marshall Plan and that advertisements would be placed in two foreign (overseas) newspapers for six days each.

On the same date of this telephone conversation, April 5th, appellees again wrote appellant as follows:

"Am enclosing check for $600 as per our telephone conversation of this morning.

"I understand this is for first payment on advertising to amount to approximately $1,800, ads to be placed in two foreign papers for six (6) days each.

"If possible send us copies of papers in which the ads are placed. Also, we would appreciate very much if you could give me an idea as to the top cash price we will be able to move the different pieces of equipment for in the export trade; assuming our equipment to be in tip-top condition, which it is.

"Thanking you very much and hoping to hear from you as soon as possible, we remain."

Following the telephone conversation of April 5th, appellant wrote Graves Brothers on this same date, in part, as follows: "Thank you for your order placed per our telephone conversation above date. The advertising placed with us consists of six insertions in each of two newspapers that have been securing excellent prices for many accounts who have advertised.

"Your advertisement will be 10 inches across 3 columns or what totals 30 inches in each newspaper, The Finnish and Arabic.

"The rate of advertising is $5.00 per inch per insertion, or a total of One Hundred and Fifty Dollars ($150) per paper per insertion for six insertions. This amount is therefore $1,800 for the complete advertising program as per scheduled. * * *

"In our conversation, Mr. Graves, you may recall I spoke to you about one-third payment ($600) as a binding payment. This is customary on all advertising schedules where the amount is in excess of $1,000. We would also appreciate a note or trade acceptance for the balance, payable in a 30 to 90 day period in installments or in total, as suits your position at this time. The terms you may decide.

"I am in sincere belief that this equipment is in the best possible journals for its disposal and I will do all in my power to help you in every way possible."

It appears undisputed that appellant did not advertise in any foreign (overseas) newspaper, but in fact advertised in two three-page foreign language papers (Finnish and Arabic) published in New York City.

We think, in the circumstances, considering the written and oral evidence, that the parties entered into a contract which required appellant to advertise in two foreign (overseas) newspapers, where the demand was heavy and that appellant's failure to so advertise constituted a breach of the contract by appellant.

While appellant's testimony tends to contradict appellees' version of the contract, we are unable, after carefully considering all of the evidence, to say that the Chancellor's findings were against the preponderance thereof.

Accordingly, the decree must be, and is affirmed.